UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANE DeBOOR, etc.,

    Plaintiff,

v.                         CASE NO. 8:11-CV-645-T-17EAJ

PREMIER ORTHOPEDICS,
INC., etc., et al.,

    Defendants.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 21 | Motion for Summary Judgment |
| Dkt. 22 | Statement of Undisputed Facts |
| Dkt. 23 | Notice |
| Dkt. 24 | Amended Affidavit |
| Dkt. 28 | Response |
| Dkt. 29 | Notice of Filing Exhibits |
| Dkt. 30 | Statement of Disputed Facts |

Plaintiff's Complaint includes Count I, for recovery of overtime compensation, pursuant to 29 U.S.C. Sec. 216(b). Plaintiff Diane DeBoor seeks a judgment for payment of all overtime hours at one and one-half of the regular pay due her for the hours worked for which Plaintiff has not been properly compensated, liquidated damages, prejudgment interest, and reasonable attorney's fees and costs of suit.

Defendants have moved for entry of summary judgment. Defendants contend Plaintiff was an exempt administrative employee, and not entitled to receive overtime compensation.

Case No. 8:11-CV-645-T-17EAJ

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II. Statement of Facts

A. Plaintiff's Disputed Facts:

1. Plaintiff Diane DeBoor was hired by Defendants in January, 2003 as a Billing/CPM Coordinator ("Continuous Passive Motion").

2

Case No. 8:11-CV-645-T-17EAJ

2. Plaintiff was paid as an hourly employee, $12.00 per hour, in addition to a 3% commission on bills Plaintiff collected, until 2005.

3. Plaintiff was paid an annual salary of $40,000 from 2005 to 2009, and a 3% commission on the bills Plaintiff collected.

4. Beginning in January, 2010, Plaintiff was paid an annual salary of $45,000, plus a 3% commission on the bills Plaintiff collected.

5. Commencing on March 7, 2011, Plaintiff was no longer paid on a salary basis, but was paid on a "task basis," on which Plaintiff was paid $25.00 for each patient for which Plaintiff verified benefits, and a 3% commission on the bills Plaintiff collected.

6. To calculate the commissions due to Plaintiff, Plaintiff generated a report from Defendants' database, Medisoft, at the end of each month.

7. In her Affidavit, Plaintiff states that Plaintiff worked between 5 and 7 days per week, from 7:30 a.m. to 7:00 p.m., for approximately 55 to 65 hours per week. Plaintiff further states that Plaintiff worked over 40 hours in multiple work weeks within the 3 years prior to filing this lawsuit.

8. Defendants employed 5 Sales Representatives, 8 Orthopedic Technicians, and 12 Field Service Representatives during Plaintiff's' employment.

9. In her Affidavit, Plaintiff states that Plaintiff spent 70% of a typical workday performing billing and invoicing tasks, and telephone verification of insurance benefits. Plaintiff also states that Plaintiff ran monthly reports from Medisoft, including Practice Income Report, Practice Analysis Report, Claim Summary Report, CPM Write Off

Case No. 8:11-CV-645-T-17EAJ

Report and Monthly Commission Report. Plaintiff also produced a CPM Income Chart in Excel on a monthly basis, and e-mailed all reports to Defendant Bax. Plaintiff denied that Plaintiff had the discretion to write off invoices.

10. In her Affidavit, Plaintiff states that Plaintiff ordered office supplies for her own use in her home office.

11. In her Affidavit, Plaintiff states that, in conjunction with Operations Manager, Plaintiff was asked to prepare CPM Policies and Procedures because it was Plaintiff's duty to process orders and bill insurance companies for CPMs.

12. In her Affidavit, Plaintiff denies that Plaintiff sought out new business opportunities, and denies that Plaintiff performed management duties (hiring, firing and disciplining Defendant Premier's employees).

13. Plaintiff states that when Plaintiff was hired as an hourly employee, Plaintiff was paid overtime if Plaintiff worked over forty hours in a workweek. Plaintiff states that when Plaintiff became a salaried employee, Plaintiff was told Plaintiff was not required to fill out a weekly timesheet, and was told Plaintiff would not be paid overtime because Plaintiff was a salaried employee.

14. Plaintiff states that Plaintiff did not complain about not being paid overtime while Plaintiff was employed by Defendants.

B. Defendants' Undisputed Facts

The Court has attached Defendants' Statement of Undisputed Facts to this Order for ease of reference.

Case No. 8:11-CV-645-T-17EAJ

III. Discussion

A. Administrative Exemption

An "employee employed in a bona fide administrative capacity" means an employee:

> 1. Compensated on a salary or fee basis at a rate of not less than $455 per week..., exclusive of board, lodging or other facilities;
>
> 2. Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> 3. Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

See 29 C.F.R. Sec. 541.200, et seq.

1. Salary basis test

From early 2005 until March 7, 2011, Plaintiff was paid a salary at a rate of more than $455. per week. Plaintiff does not dispute that Plaintiff met the requirements of the "salary basis test" during that period of time. See 29 C.F.R. 541.602(a). From March 7, 2011 until the end of Plaintiff's employment in April, 2011, Plaintiff DeBoor was not paid on a salary basis. As to the period of time from March 7, 2011 until the end of Plaintiff's employment in April, 2011, the Motion for Summary Judgment is **denied**.

2. Primary duty test

This test is satisfied where the employee's primary duty [is] the performance of work directly related to the management or general business operations of the

Case No. 8:11-CV-645-T-17EAJ

employer and the employer's customers. See 29 C.F.R. Sec. 541.201(a). Work directly related to management or general business operations includes work in functional areas such as accounting, auditing, quality control and regulatory compliance. See 29 C.F.R. Sec. 541.201. "Primary duty" is defined as the principal, main, major or most important duty that the employee performs," and must be based on all facts of a particular case, with the major emphasis on the character of the employee's job as a whole. See 29 C.F.R. Sec. 541.700. The primary duty test turns on the employee's day-to-day activities, not job descriptions, resumes, or performance evaluations. See Paul v. UPMC Health Sys., 2009 WL 699943, at *10 (W.D. Pa. 2009).

Defendant argues that Plaintiff was the "face" of Defendant's CPM business, as Plaintiff was responsible for all CPM customer service and maintenance of all CPM accounts. Defendant argues that Plaintiff kept and maintained all CPM customer records and Plaintiff had independent authority to adjust customer bills without further authorization. Defendant argues that Plaintiff had independent authority to make financial commitments on behalf of Defendant. Defendant further argues that Plaintiff had independent authority to enter into agreements with insurance companies which committed Defendant to the financial arrangements Plaintiff negotiated without any further authority from anyone else at Defendant Premier. Defendant argues that Plaintiff was involved in developing, planning and implementing strategies designed to promote the Premier brand and increase the customer base.

Plaintiff responds that Plaintiff's primary duty was the performance of clerical tasks, such as answering phones, conducting insurance verifications, and generating and sending invoices to insurance companies and patients. Plaintiff further argues that the exempt duties that Defendants' contend Plaintiff performed were done so infrequently that they could not be considered Plaintiff's primary duty. Plaintiff denies that Plaintiff supervised or managed any of Defendant's employees. Plaintiff argues

6

Case No. 8:11-CV-645-T-17EAJ

that the nonexempt duties Plaintiff performed, such as billing and collection, were of substantial importance to Defendants, compared to the exempt work Plaintiff performed, and Plaintiff was not free from direct supervision as to tasks such as contacting new insurance companies to obtain business, sending bills to collection agencies, or adjusting bills for any reason. Plaintiff argues that Defendant have provided no evidence that Plaintiff's salary was significantly higher than that of non-exempt employees.

3. Discretion and independent judgment

To meet this requirement, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. See 29 C.F.R. Sec. 541.202(a).

The factors the Court considers include:

> whether the employee has the authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has the authority to waive or deviate from established policies and procedures without prior approval; whether the employee has the authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. Sec. 541. 202(b).

7

Case No. 8:11-CV-645-T-17EAJ

29 C.F.R. Sec. 541.202(e) provides:

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a statistician.

Defendants contend that Plaintiff's primary duties include the exercise of discretion and independent judgment with respect to matters of significance. Defendants argue that Plaintiff typically worked alone and without supervision. Defendants denied providing Plaintiff with leads or formal instructions, whether to provide write-offs of bills, developing business with the VA Hospital and workers compensation providers, making financial commitments on behalf of Premier, assigning CPM work to Field Technicians and Sales Representatives, developing CPM procedures for Premier employees, all while working from home and setting her own hours. Defendants argue that Plaintiff wrote business procedures to assist representatives in the field to perform their jobs, assigned employees to deliver and pick up CPM machines, and supervised and reprimanded CPM employees. Defendants argue that Plaintiff was proud of generating ideas on how to increase business, and was instrumental in increasing income and reducing write-offs. Defendants argue that Plaintiff's work affected business operations to a substantial degree.

Plaintiff responds that Plaintiff was not allowed to make decisions, significant or otherwise. Plaintiff contends that Plaintiff reduced bills to zero as a matter of established procedure before sending them to a collection agency, to ensure that the bill did not appear on the accounts receivable report as anticipated revenue. Plaintiff contends that Plaintiff had to consult with Defendants before referring a bill to a collection agency, or writing a bill off altogether. Plaintiff further contends that Plaintiff

Case No. 8:11-CV-645-T-17EAJ

could not submit applications to potentially obtain business from additional insurance companies without consulting with Defendants. Plaintiff argues that Plaintiff could not reprimand employees for failing to follow CPM procedures, and the reports Plaintiff generated did not require discretion of significant decision-making.

The Eleventh Circuit Court of Appeals has held that "where an employee spends the majority of his time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the non-exempt duties are comparatively more important that the exempt duties. See Barreto v. David Marketplace, LLC, 331 Fed. Appx. 672, 677 n.1 (11th Cir. 2009). In this case, issues of material fact are in dispute as to Plaintiff's primary duty and Plaintiff's exercise of discretion and independent judgment, and these disputed issues preclude the entry of summary judgment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **denied**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 30th day of March, 2012.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

## STATEMENT OF UNDISPUTED FACTS

1. During the time relevant to the issues in this case, Defendant Carl Bax owned and operated Defendant Premier Orthopedics, Inc. in Hillsborough County, Florida. (Complaint ¶ 3 and ¶ 9; Affidavit - Carl Bax ¶ 2, )

2. Premier was in the business of distributing and servicing specialized orthopedic medical devices (Continuous Passive Motion Machines, hereinafter referred to as CPM) to medical care providers and patients. (Affidavit - Carl Bax ¶ 2)

3. At all times material to this Complaint, Premier was subject to the FLSA. (Complaint ¶ 5 to ¶ 8.

4. There were two main components of Premier's business - the provision of medical braces to physicians and medical care providers and the the provision of (Continuous Passive Motion machines), hereinafter referred to as CPM) to medical care providers and patients. (Affidavit - Carl Bax ¶ 2 )

5. Plaintiff Diane DeBoor was an employee of Premier for over 8 years. (Affidavit - Carl Bax ¶ 2 ; Exhibit C, page 2, ¶ 1)

6.     DeBoor performed a variety of administrative, management, billing, and collection duties for Premier and did not have a specific job title.  (Affidavit - Carl Bax ¶ 3 )

7.     For most of her years of employment with Premier, DeBoor worked out of her home.  (Affidavit - Carl Bax ¶ 3 )

8.     The last full year DeBoor worked for Premier (2010), she earned $45,686.36 in salary and $26,131.36 in commissions for a total of $71,817.72.  (Exhibit D, page 2; (Affidavit - Carl Bax ¶ 4 ;Affidavit - Debbie Bax ¶ 2 )

9.     DeBoor's salary was paid in the biweekly amount of $1,903.59 (which was $878.58 per week).  (Affidavit - Carl Bax ¶ 4 ; Affidavit - Debbie Bax ¶ 2 )

10.    DeBoor earned commissions on the amount of collections she made.  She calculated her own commissions.  When it was time to be paid, DeBoor calculated her commissions and sent that calculation by email to Carl Bax informing him of the extra amount (in addition to her salary) she was owed in commissions.  After a quick review, Carl Bax forwarded the email to the bookkeeper, Debbie Bax, who entered that amount into Quickbooks and issued a check to DeBoor.  (Affidavit - Carl Bax ¶ 5 ; Affidavit - Debbie Bax ¶ 3 )

11.    DeBoor was the only non sales employee who earned commissions. (Affidavit - Carl Bax ¶ 5 ; Affidavit - Debbie Bax ¶ 3 )

12.    Carl Bax was never aware of the average number of hours DeBoor worked because he did not require her to keep track of her hours.  Other than being aware that she generally worked during business hours from Monday through Friday, he was not aware of her typical schedule.  Neither he nor anyone else kept track of DeBoor's lunch times or times when she left for a few hours in the middle of the day.  She was free to take breaks or run personal errands at her

convenience throughout the day. (Affidavit - Carl Bax ¶ 6 )

13. DeBoor knew what work had to be done and Bax left her to manage it on her own. She had the discretion to manage her time and had total control over the times and days she worked, how she accomplished her work, and her day to day duties varied according to the work she wanted to accomplish that day. She worked with little to no supervision. (Affidavit - Carl Bax ¶ 6 )

14. Premier never reduced DeBoor's salary for not working 40 hours a week, nor was her pay ever reduced for any partial day absences. (Affidavit - Carl Bax ¶ 7 ; Affidavit - Debbie Bax ¶ 4 )

15. Premier's business consisted of two main components - the supplying of orthopedic braces and the supplying of CPM machines. DeBoors was involved with every aspect of the supplying of CPM machines, and did some work with the bracing part of the business as well. (Affidavit - Carl Bax ¶ 8 )

16. Among other things, as part of her job, DeBoor arranged for the delivery and pick up of the CPM machines and directed Premier's employees on accomplishing this. She would first decide which Field Technician or Sales Representative would be assigned to deliver the CPM machine. After the CPM was delivered and at a later time was picked up, she would then bill the insurance company and be responsible for the collection of the bill. No other Premier employee had anything to do with CPM billing and collections except DeBoor. (Affidavit - Carl Bax ¶ 9 )

17. DeBoor maintained the database and all records for all CPM work assignments for Field Technicians and Sales Representatives. She wrote the policy and procedure manual to be used

by those employees and gave them directions of how and when tasks needed to be completed. She also supervised their work and at times reprimanded them. (Affidavit - Carl Bax ¶ 5 ; Affidavit - Debbie Bax ¶ 10 )

18. DeBoor prepared the following monthly reports: Practice Income, Practice Analysis, Claim Summary, CPM Write Off Recap, CPM Income Chart, and her Commission Report. (Affidavit - Carl Bax ¶ 11 ; Affidavit - Debbie Bax ¶ 5 )

19. DeBoor was responsible for all CPM customer service and the maintenance of all CPM accounts. She kept and maintained all CPM customer records. (Affidavit - Carl Bax ¶ 12 )

20. DeBoor had independent authority to adjust customer bills without further authorization from anyone else at Premier. In practice, if there was a large write off she would call Carl Bax and inform but he did not require her to do so. (Affidavit - Carl Bax ¶ 13 )

21. DeBoor had independent authority to make financial commitments on behalf of Premier. She called insurance companies and negotiated prices with them for Premier's CPM and (sometimes) bracing services. She had the independent authority to enter into agreements with insurance companies which committed Premier to the financial arrangements she negotiated without any further authority from anyone else at Premier. (Affidavit - Carl Bax ¶ 5 )

22. DeBoor had the discretion to purchase routine office items, without obtaining anyone's authority, then submit the bill to be paid by Premier. (Affidavit - Carl Bax ¶ 15 ; Affidavit - Debbie Bax ¶ 6 )

23. She had the freedom and discretion to contact potential clients on her own. She developed her own leads and then would recommend entering into contracts with clients when warranted. (Affidavit - Carl Bax ¶ 16 )

24. DeBoor made recommendations on how to increase business and develop more clients. She researched insurance providers, then suggested that Premier contract with those providers to increase business. She most often did this without specific direction from anyone at Premier. (Affidavit - Carl Bax ¶ 17 )

25. DeBoor prepared a Performance Evaluation Form in which she listed her duties as composing procedures for representatives, doing research to find alternative service providers for the purpose of avoiding write offs to Premier, working with medical care providers to develop Premier's provision of units under worker's compensation cases, working closely with the VA Hospital in Tampa to develop CPM provision by Premier, and providing encouragement to the representatives on the importance of following company procedures. (Exhibit A, page 2 ; Affidavit - Carl Bax ¶ 18 and ¶ 21 ; Affidavit - Debbie Bax ¶ 8 )

26. In the Performance Evaluation Form, DeBoor also listed her accomplishments as increasing income by 16% and decreasing write offs by 30% for the prior year. (Exhibit A, page 3 ; Affidavit - Carl Bax ¶ 18 and ¶ 21 ; Affidavit - Debbie Bax ¶ 8 )

27. In May of 2010, DeBoor asked Carl Bax to give her a Letter of Recommendation for her personal file. (Exhibit C, page 1 ; Affidavit - Carl Bax ¶ 19 and ¶ 23 )

28. On May 12, 2010, Carl Bax wrote a letter in which he described some of DeBoor's job duties as: "managing the staff that provided CPM services", "implemented the procedures that the employees followed", "scheduled and managed several Premier tasks to maintain an efficient operation", and "instrumental in developing several cost saving actions." (Exhibit C, page 2 ; Affidavit - Carl Bax ¶ 19 and ¶ 23 )

29. Carl Bax gave DeBoor the letter and she never disputed his description of her job duties

or asked him to make any changes or corrections to the letter. (Exhibit C, page 2 ; Affidavit - Carl Bax ¶ 19 and ¶ 23 )

30. DeBoor never told Carl Bax or Debbie Bax she believed she was due overtime nor did she ever ask them to pay her overtime. (Affidavit - Carl Bax ¶ 20 Affidavit - Debbie Bax ¶ 8 )